Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

------------------------------------------------------------------ x

KETAN MHATRE,
*on behalf of himself and others similarly situated,*

|  |  |
|---|---|
| Plaintiff, | Index No. 26-cv-00971 |
| v. | **FLSA COLLECTIVE ACTION** |
| STONE LEGACY CORPORATION<br> d/b/a Saffron – Modern Indian Dining<br> d/b/a Aya,<br>PAPILLON LLC<br> d/b/a Saffron – Modern Indian Dining<br> d/b/a Aya,<br>STONE AND BRICK LLC<br> d/b/a Saffron – Modern Indian Dining<br> d/b/a Aya,<br>HANISH KUMAR,<br>FATIMA KUMAR, and<br>ABHISHEK PATIL, | **<u>COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | |

------------------------------------------------------------------ x

Plaintiff KETAN MHATRE (hereinafter "Mhatre" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants STONE LEGACY CORPORATION d/b/a Saffron – Modern Indian Dining d/b/a Aya (hereinafter "Stone Legacy"), PAPILLON LLC d/b/a Saffron – Modern Indian Dining d/b/a Aya (hereinafter "Papillon"), STONE AND BRICK LLC d/b/a Saffron – Modern Indian Dining d/b/a Aya (hereinafter "Stone and Brick") (Stone Legacy, Papillon, and Stone and Brick hereinafter collectively "Corporate Defendants"), HANISH KUMAR (hereinafter "Hanish"),

FATIMA KUMAR (hereinafter "Fatima"), and ABHISHEK PATIL (hereinafter "Patil") (Hanish, Fatima, and Patil hereinafter collectively "Individual Defendants") (Corporate Defendants and Individual Defendants collectively hereinafter "Defendants"), and alleges as follows:

## **INTRODUCTION**

1. This action is brought by Plaintiff, on behalf of himself as well as other employees similarly situated, against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the Wisconsin Wage Payment and Collection Law ("WWPCL"), Wis. Stat. §§ 109.01 *et seq.*, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and practices.

2. Plaintiff alleges, pursuant to FLSA, that he is entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages; (3) liquidated damages; (4) reasonable attorney fees; and (5) the costs of the action.

3. Plaintiff further alleges, pursuant to FLSA, that he is entitled to recover from Defendant Patil, such legal and equitable relief as may be appropriate to effectuate the purposes of Section 215(a)(3) of the FLSA.

4. Plaintiff alleges, pursuant to WWPCL, that he is entitled to recover from the Defendants: (1) unpaid earned wages; (2) civil penalties; and (3) a reasonable sum for expenses including attorney fees.

5. Plaintiff further alleges, pursuant to WWPCL, that he is entitled to recover from Defendant Patil, such legal and equitable relief as may be appropriate to effectuate the purposes of Section 109.03(7) of the WWPCL.

2

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's WWPCL claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and because the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8. Plaintiff was employed by Defendants to work as a cook at Aya from on or about February 2, 2026 through on or about March 22, 2026.

## DEFENDANTS

*Corporate Defendants*

9. Stone Legacy is a domestic business corporation with a registered office at 4754 W Abbott Avenue, Greenfield, WI 53220, and principal places of business at: 223 N Water Street, Suite 100, Milwaukee, WI 53202, where it operates an Indian restaurant known as "Saffron – Modern Indian Dining" together with the other Corporate Defendants; and 700 E Kilbourn Avenue, Suite 110, Milwaukee, WI 53202, where it operates a Middle Eastern restaurant known as "Aya" together with the other Corporate Defendants.

10. Papillon is a domestic limited liability company with a registered office and principal office at 4754 W Abbott Avenue, Greenfield, WI 53220, and principal places of business at: 223 N Water Street, Suite 100, Milwaukee, WI 53202, where it operates Saffron – Modern Indian Dining together with the other Corporate Defendants; and 700 E Kilbourn Avenue, Suite 110, Milwaukee, WI 53202, where it operates Aya together with the other Corporate Defendants.

11. Stone and Brick is a domestic limited liability company with a registered office and principal office at 4754 W Abbott Avenue, Greenfield, WI 53220, and principal places of business at: 223 N Water Street, Suite 100, Milwaukee, WI 53202, where it operates Saffron – Modern Indian Dining together with the other Corporate Defendants; and 700 E Kilbourn Avenue, Suite 110, Milwaukee, WI 53202, where it operates Aya together with the other Corporate Defendants.

12. Saffron – Modern Indian Dining, and Aya, both purchase, and have employees that handle, goods moved in interstate and/or foreign commerce, including but not limited to alcohol from Australia, California, Cyprus, France, Germany, Greece, Italy, Lebanon, Nevada, New Zealand, Oregon, Slovenia, Spain, Turkey, and Washington.

13. Saffron – Modern Indian Dining's grand opening to the public was on or about June 4, 2022.

14. Aya's grand opening to the public was on or about February 23, 2026, but it "soft-opened" to private parties on or about February 17, 2026, and members of the press on or about February 12, 2026.

15. In each of the years 2022 through 2025, Saffron – Modern Indian Dining had gross revenue in excess of $500,000.00.

16. During the year 2026, Saffron – Modern Indian Dining has had or will have gross revenue in excess of $500,000.00.

17. During the year 2026, Aya has had or will have gross revenue in excess of $500,000.00.

18. During the year 2026, Saffron – Modern Indian Dining, and Aya, considered together, have had or will have gross revenue in excess of $500,000.00.

19. Corporate Defendants operated Aya and Saffron – Modern Indian Dining together, as a single integrated enterprise, which employed Plaintiff.

20. Corporate Defendants share common owners, to wit, Individual Defendants Hanish, Fatima, and Patil.

21. Individual Defendants Hanish and Fatima exercise financial control in common over each of the Corporate Defendants.

22. Saffron – Modern Indian Dining share common managers, to wit, Individual Defendants Hanish, Fatima, and Patil.

23. Corporate Defendants share a common central office in which labor relations are centralized, to wit, 4754 W Abbott Avenue, Greenfield, WI 53220.

24. Stone and Brick holds Saffron – Modern Indian Dining's, and Aya's, workers' compensation insurance policies, with the carrier Secura Insurance Group.

25. Stone and Brick holds Saffron – Modern Indian Dining's Class "B" beer and liquor licenses, with Fatima as its principal.

26. Despite serving cocktails, beer, and wine, Aya does not have its own beer or liquor license; upon information and belief, Aya uses Saffron – Modern Indian Dining's beer and liquor licenses.

27. Stone Legacy put "dba Aya" on its paychecks to Plaintiff.

*Individual Defendants*

28. Individual Defendants are employers within the meanings of FLSA and WWPCL, jointly with Corporate Defendants, and are jointly and severally liable with Corporate Defendants for violations of the FLSA and WWPCL.

29. Hanish is a part-owner of Corporate Defendants, and of Corporate Defendants' registered office, 4754 W Abbott Avenue, Greenfield, WI 53220.

5

30. At all times relevant to this lawsuit, Hanish had authority to hire and fire employees to work at Saffron – Modern Indian Cuisine and Aya.

31. Hanish is a day-to-day, hands-on manager of Saffron – Modern Indian Cuisine and Aya who throughout the period relevant to this lawsuit supervised and controlled the work and schedules of employees of Saffron – Modern Indian Cuisine and Aya, including Plaintiff.

32. Hanish set Saffron – Modern Indian Cuisine's, and Aya's, employees' wage rates, and determined their methods of pay.

33. Hanish was responsible for keeping records of Saffron – Modern Indian Cuisine's, and Aya's, employees' hours worked and wages owed and paid.

34. Hanish and Fatima are husband and wife, respectively.

35. Fatima is a part-owner of Corporate Defendants, and of Corporate Defendants' registered office, 4754 W Abbott Avenue, Greenfield, WI 53220.

36. At all times relevant to this lawsuit, Fatima had authority to hire and fire employees to work at Saffron – Modern Indian Cuisine and Aya.

37. Fatima is a day-to-day, hands-on manager of Saffron – Modern Indian Cuisine and Aya who throughout the period relevant to this lawsuit supervised and controlled the work and schedules of employees of Saffron – Modern Indian Cuisine and Aya, including Plaintiff.

38. Fatima set Saffron – Modern Indian Cuisine's, and Aya's, employees' wage rates, and determined their methods of pay.

39. Fatima was responsible for keeping records of Saffron – Modern Indian Cuisine's, and Aya's, employees' hours worked and wages owed and paid.

40. Fatima is the registered agent for all of the Corporate Defendants.

41. According to Experian, Fatima is the "Manager" of Papillon.

42. Fatima is Stone and Brick's liquor license principal.

43. Fatima signed Plaintiff's paychecks.

44. At all times relevant to this lawsuit, Patil had authority to hire and fire employees to work at Saffron – Modern Indian Cuisine and Aya.

45. Patil is a day-to-day, hands-on manager of Saffron – Modern Indian Cuisine and Aya who throughout the period relevant to this lawsuit supervised and controlled the work and schedules of employees of Saffron – Modern Indian Cuisine and Aya, including Plaintiff.

46. Patil set Saffron – Modern Indian Cuisine's, and Aya's, employees' wage rates, and determined their methods of pay.

47. Patil was responsible for keeping records of Saffron – Modern Indian Cuisine's, and Aya's, employees' hours worked and wages owed and paid.

48. Patil is a part-owner of Corporate Defendants.

49. Patil is the head chef at Aya.

50. Patil was Plaintiff's immediate supervisor at Aya.

## STATEMENT OF FACTS

51. Plaintiff was employed by Defendants to work as a cook at Aya from on or about February 2, 2026 through on or about March 22, 2026—a period of seven weeks.

52. Throughout his employment, Plaintiff regularly worked about seventy-seven hours per week: between ten and twelve hours per day—on average eleven hours per day—seven days per week.

53. From on or about February 2, 2026 through on or about February 16, 2026, Plaintiff's principal duties consisted of helping to set up the restaurant and make sure it was ready to open for business.

7

54. From on or about February 17, 2026 through on or about March 22, 2026, Plaintiff's principal duties consisted of cooking fried dishes and appetizers the recipes of which had been decided by the Individual Defendants.

55. When he was hired, Individual Defendants promised Plaintiff he would be paid a salary of $950.00 per week.

56. However, Plaintiff was only paid for three weeks of his employment.

57. Plaintiff was paid $950.00 for his work between February 9, 2026 and February 15, 2026, by Stone Legacy check dated February 24, 2026 and signed by Fatima.

58. Plaintiff was paid $2,216.67 for his work between February 23, 2026 and March 8, 2026, by Stone Legacy check dated March 10, 2026 and signed by Fatima.

59. Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026.

60. Plaintiff was not paid for his work from February 16, 2026 and February 22, 2026.

61. Plaintiff was not paid for his work from March 9, 2026 through March 22, 2026.

62. Because Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026, from February 16, 2026 and February 22, 2026, and from March 9, 2026 through March 22, 2026, he was not paid at least the federal minimum wage for his hours worked during these periods.

63. Over the course of his employment, Plaintiff accrued approximately $2,233.00 in unpaid federal minimum wages: $7.25/hour * 77 hours/week * 4 weeks.

64. Because Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026, from February 16, 2026 and February 22, 2026, and from March 9, 2026 through March 22, 2026, he was not paid at least one and one-half times the greater of the federal

minimum wage and his regular hourly wage for his hours worked during these periods, for hours worked beyond the fortieth hour per week.

65. Plaintiff's salary payments for the periods February 9, 2026 through February 15, 2026, and from February 23, 2026 through March 8, 2026, compensated him for each of his working hours at a regular rate, and did not include an additional one-half times that regular rate for his hours worked beyond the fortieth hour per week.

66. Over the course of his employment, Plaintiff accrued approximately $1,297.32 in unpaid overtime wages: ($7.25/hour * 0.5 * 37 hours/week * 4 weeks) + (($950.00/week / 77 hours/week) * 0.5 * 37 hours/week * 1 week) + (($1,108.34/week / 77 hours/week) * 0.5 * 37 hours/week * 2 weeks).

67. Over the course of his employment, Plaintiff accrued $3,483.33 in unpaid back salary: ($950.00/week * 7 weeks) – ($950.00 + $2,216.67).

68. On or about April 1, 2026, Plaintiff text-messaged Patil asking to be paid his back salary.

69. Because Plaintiff was asking to be paid for weeks for which he had been paid nothing, Patil understood or ought to have understood that Plaintiff was asking, in part, to be paid at least the minimum wage for his work, and not to work for free.

70. Patil responded with profanity, averments that Plaintiff deserved nothing, threats to have immigration authorities investigate Plaintiff's marriage, and a warning to Plaintiff not try and sue to recover his pay.

71. Patil's response was calculated to dissuade Plaintiff subjectively, and a reasonable employee, from pursuing lawful remedies for his injuries under the FLSA and WWPCL.

**COLLECTIVE ALLEGATIONS**

72. Plaintiff brings this action individually and on behalf of all other current and former non-exempt employees of Defendants, who were employed by Defendant during the three (3)

years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

<u>**STATEMENT OF CLAIMS**</u>

**COUNT I.**
**VIOLATION OF 29 U.S.C. § 206(a)(1)(C)—FAILURE TO PAY MINIMUM WAGE BROUGHT ON BEHALF OF PLAINTIFF AND THE COLLECTIVE AGAINST ALL DEFENDANTS**

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Section 206(a) of the FLSA provides in relevant part that "[e]very employer shall pay to each of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than— (C) $7.25 an hour, beginning [July 24, 2009]."

75. Plaintiff was employed by Defendants to work as a cook at Aya from on or about February 2, 2026 through on or about March 22, 2026—a period of seven weeks.

76. Throughout his employment, Plaintiff regularly worked about seventy-seven hours per week: between ten and twelve hours per day—on average eleven hours per day—seven days per week.

77. However, Plaintiff was only paid for three weeks of his employment.

78. Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026.

79. Plaintiff was not paid for his work from February 16, 2026 and February 22, 2026.

80. Plaintiff was not paid for his work from March 9, 2026 through March 22, 2026.

81. Because Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026, from February 16, 2026 and February 22, 2026, and from March 9, 2026 through

March 22, 2026, he was not paid at least the federal minimum wage for his hours worked during these periods.

82. Over the course of his employment, Plaintiff accrued approximately $2,233.00 in unpaid federal minimum wages: $7.25/hour * 77 hours/week * 4 weeks.

83. Section 216(b) of the FLSA provides in relevant part that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages…, and in an additional equal amount as liquidated damages.… An action to recover the liability prescribed in the preceding sentence[] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

84. Defendants knowingly, willfully, and maliciously disregarded the minimum-wage provisions of the FLSA by failing to pay Plaintiff for four of his workweeks.

**COUNT II.**
**VIOLATION OF 29 U.S.C. § 207(a)(1)—FAILURE TO PAY OVERTIME**
**BROUGHT ON BEHALF OF PLAINTIFF AND THE COLLECTIVE AGAINST ALL DEFENDANTS**

85. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

11

86. Section 207(a)(1) of the FLSA provides in relevant part that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

87. Plaintiff was employed by Defendants to work as a cook at Aya from on or about February 2, 2026 through on or about March 22, 2026—a period of seven weeks.

88. Throughout his employment, Plaintiff regularly worked about seventy-seven hours per week: between ten and twelve hours per day—on average eleven hours per day—seven days per week.

89. From on or about February 2, 2026 through on or about February 16, 2026, Plaintiff's principal duties consisted of helping to set up the restaurant and make sure it was ready to open for business.

90. From on or about February 17, 2026 through on or about March 22, 2026, Plaintiff's principal duties consisted of cooking fried dishes and appetizers the recipes of which had been decided by the Individual Defendants.

91. When he was hired, Individual Defendants promised Plaintiff he would be paid a salary of $950.00 per week.

92. However, Plaintiff was only paid for three weeks of his employment.

93. Plaintiff was paid $950.00 for his work between February 9, 2026 and February 15, 2026, by Stone Legacy check dated February 24, 2026 and signed by Fatima.

94. Plaintiff was paid $2,216.67 for his work between February 23, 2026 and March 8, 2026, by Stone Legacy check dated March 10, 2026 and signed by Fatima.

95. Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026.

96. Plaintiff was not paid for his work from February 16, 2026 and February 22, 2026.

97. Plaintiff was not paid for his work from March 9, 2026 through March 22, 2026.

98. Because Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026, from February 16, 2026 and February 22, 2026, and from March 9, 2026 through March 22, 2026, he was not paid at least one and one-half times the greater of the federal minimum wage and his regular hourly wage for his hours worked during these periods, for hours worked beyond the fortieth hour per week.

99. Plaintiff's salary payments for the periods February 9, 2026 through February 15, 2026, and from February 23, 2026 through March 8, 2026, compensated him for each of his working hours at a regular rate, and did not include an additional one-half times that regular rate for his hours worked beyond the fortieth hour per week.

100. Over the course of his employment, Plaintiff accrued approximately $1,297.32 in unpaid overtime wages: ($7.25/hour * 0.5 * 37 hours/week * 4 weeks) + (($950.00/week / 77 hours/week) * 0.5 * 37 hours/week * 1 week) + (($1,108.34/week / 77 hours/week) * 0.5 * 37 hours/week * 2 weeks).

101. Section 216(b) of the FLSA provides in relevant part that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation…, and in an additional equal amount as liquidated damages.… An action to recover the liability prescribed in the preceding sentence[] may be maintained against any employer (including

13

a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

102. Defendants knowingly, willfully, and maliciously disregarded the overtime provisions of the FLSA by failing to pay Plaintiff for four of his workweeks, and by failing to pay Plaintiff time-and-a-half for his overtime hours on those weeks for which we was paid.

**COUNT III.**
**VIOLATION OF 29 U.S.C. § 215(a)(3)—RETALIATION FOR PROTECTED ACTIVITY BROUGHT ON BEHALF OF PLAINTIFF AGAINST DEFENDANT PATIL**

103. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104. Section 215(a) of the FLSA provides in relevant part that "[a]fter [October 23, 1938], it shall be unlawful for any person— (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]"

105. Over the course of his employment, Plaintiff accrued $3,483.33 in unpaid back salary: ($950.00/week * 7 weeks) – ($950.00 + $2,216.67).

106. On or about April 1, 2026, Plaintiff text-messaged Patil asking to be paid his back salary.

107. Because Plaintiff was asking to be paid for weeks for which he had been paid nothing, Patil understood or ought to have understood that Plaintiff was asking, in part, to be paid at least the minimum wage for his work, and not to work for free.

108. Patil responded with profanity, averments that Plaintiff deserved nothing, threats to have immigration authorities investigate Plaintiff's marriage, and a warning to Plaintiff not try and sue to recover his pay.

109. Patil's response was calculated to dissuade Plaintiff subjectively, and a reasonable employee, from pursuing lawful remedies for his injuries under the FLSA and WWPCL.

110. Section 216(b) of the FLSA provides in relevant part that "[a]ny employer who violates the provisions of section 215(a)(3)… of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)… of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

111. Patil knowingly, willfully, and maliciously disregarded the anti-retaliation provisions of the FLSA by threatening him with an immigration investigation if he sued to recover his pay.

**COUNT IV.**
**VIOLATION OF WIS. STAT. § 109.03(2)—FAILURE TO PAY WAGES**
**BROUGHT ON BEHALF OF PLAINTIFF AGAINST ALL DEFENDANTS**

112. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

15

113. Section 109.03(2) of the WWPCL provides that "[a]ny employee, except a sales agent employed on a commission basis, not having a written contract for a definite period, who quits employment or who is discharged from employment shall be paid in full by no later than the date on which the employee regularly would have been paid under the employer's established payroll schedule or the date of payment required under sub. (1), whichever is earlier."

114. Section 109.03(1) of the WWPCL, referenced in Section 109.03(2), provides in relevant part that "[e]very employer shall as often as monthly pay to every employee engaged in the employer's business, except those employees engaged in logging operations and farm labor, all wages earned by the employee to a day not more than 31 days prior to the date of payment.… Any employee who is absent at the time fixed for payment or who for any other reason is not paid at that time shall be paid thereafter at any time upon 6 days' demand."

115. When he was hired, Individual Defendants promised Plaintiff he would be paid a salary of $950.00 per week.

116. However, Plaintiff was only paid for three weeks of his employment.

117. Plaintiff was paid $950.00 for his work between February 9, 2026 and February 15, 2026, by Stone Legacy check dated February 24, 2026 and signed by Fatima.

118. Plaintiff was paid $2,216.67 for his work between February 23, 2026 and March 8, 2026, by Stone Legacy check dated March 10, 2026 and signed by Fatima.

119. Plaintiff was not paid for his work from February 2, 2026 through February 8, 2026.

120. Plaintiff was not paid for his work from February 16, 2026 and February 22, 2026.

121. Plaintiff was not paid for his work from March 9, 2026 through March 22, 2026.

122. Over the course of his employment, Plaintiff accrued $3,483.33 in unpaid back salary: ($950.00/week * 7 weeks) – ($950.00 + $2,216.67).

123. As of this writing, Plaintiff has not been paid his $3,483.33 in unpaid back salary.

124. Section 109.11(2)(a) of the WWPCL provides that '[i]n a wage claim action that is commenced by an employee before the department has completed its investigation under s. 109.09(1) and its attempts to compromise and settle the wage claim under sub. (1), a circuit court may order the employer to pay to the employee, in addition to the amount of wages due and unpaid and in addition to or in lieu of the criminal penalties specified in sub. (3), increased wages of not more than 50 percent of the amount of wages due and unpaid."

125. Defendants knowingly, willfully, and maliciously disregarded the provisions of the WWPCL by failing to pay Plaintiff for four of his workweeks, and by not providing Plaintiff with his back salary at his time of separation.

**COUNT V.**
**VIOLATION OF WIS. STAT. § 109.03(7)—RETALIATION FOR PROTECTED ACTIVITY**
**BROUGHT ON BEHALF OF PLAINTIFF AGAINST DEFENDANT PATIL**

126. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

127. Section 109.03(7) of the WWPCL provides in relevant part that "Section 111.322(2m) applies to discharge and other discriminatory acts arising in connection with any proceeding under this section."

128. Section 111.322 of the Wisconsin Statutes provides in relevant part that "it is an act of employment discrimination to do any of the following:… (2m) [t]o discharge or otherwise discriminate against any individual because of any of the following: (a) [t]he individual files a complaint or attempts to enforce any right under s. … 109.03…[;] (b)

[t]he individual testifies or assists in any action or proceeding held under or to enforce any right under s. … 109.03…[; or] (d) [t]he individual's employer believes that the individual engaged or may engage in any activity described in paras. (a) to (bm) [including para. (b)]."

129. Over the course of his employment, Plaintiff accrued $3,483.33 in unpaid back salary: ($950.00/week * 7 weeks) – ($950.00 + $2,216.67).

130. On or about April 1, 2026, Plaintiff text-messaged Patil asking to be paid his back salary.

131. Because Plaintiff was asking to be paid for weeks for which he had been paid nothing, Patil understood or ought to have understood that Plaintiff was asking, in part, to be paid at least the minimum wage for his work, and not to work for free.

132. Patil responded with profanity, averments that Plaintiff deserved nothing, threats to have immigration authorities investigate Plaintiff's marriage, and a warning to Plaintiff not try and sue to recover his pay.

133. Patil's response was calculated to dissuade Plaintiff subjectively, and a reasonable employee, from pursuing lawful remedies for his injuries under the FLSA and WWPCL.

134. Patil knowingly, willfully, and maliciously disregarded the anti-retaliation provisions of the WWPCL by threatening him with an immigration investigation if he sued to recover his pay.

## **DEMAND FOR TRIAL BY JURY**

135. Plaintiff demands a trial by jury on all questions so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the Collective to the extent noted above, respectfully requests that this Court enter a judgment providing the following relief:

18

a. At the earliest practicable time giving notice of this action, or authorizing Plaintiff to give notice of this action, to all Collective members. Such notice shall inform such Collective members that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they are owed unpaid wages, unpaid minimum wages, or unpaid overtime;

b. A declaratory judgment that the practices complained of herein are unlawful under FLSA and WWPCL;

c. An injunction against Corporate Defendants, their owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, including but not limited to Individual Defendants, from engaging in each of the unlawful practices and policies set forth herein;

d. An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and the Collective under the FLSA;

e. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Collective under the FLSA;

f. An award of unpaid wages, and a civil penalty equal to half unpaid wages, due to Plaintiff under the WWPCL;

g. An award of such legal and equitable relief as may be appropriate to effectuate the purposes of Section 215(a)(3) of the FLSA and Section 109.03(7) of the WWPCL;

h. An award of reasonable attorneys' fees and costs of the action; and

i. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
May 31, 2026

19

/s/ Tiffany Troy
Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff*